**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Robert Plutt, | No. CV 05-0384-PHX-DGC |
| Plaintiff, | |
| vs. | **ORDER** |
| Safeway, Inc., a Delaware corporation, | |
| Defendant. | |

Plaintiff's complaint asserts that he was improperly terminated from his employment because of his age, in violation of the Age Discrimination in Employment Act ("ADEA"), and on the basis of his gender, in violation of Title VII. Doc. #1. Defendant has filed a motion for summary judgment on both claims. Doc. #34. Plaintiff concedes that summary judgement is proper on his Title VII claim, Doc. #38 at 4, and Defendant's motion will therefore be granted with respect to this claim. For the reasons stated below, however, Defendant's motion will be denied with respect to Plaintiff's ADEA claim.

**I.   Facts.**

Plaintiff has been a Safeway store manager for approximately thirty years. In April of 2004, Plaintiff applied for a transfer from Safeway's Denver division to its Phoenix division. His application was approved by Bryan Durrett, the Phoenix Division's Human Resources Director, and Steve Neibergall, the Phoenix Division's Vice President of Retail Operations. Plaintiff transferred to a store manager position in the Phoenix Division on

May 17, 2004. Plaintiff was terminated by District Manager Phil West for policy code violations less than four months later.

Safeway's written policy provides that "all financial transactions and funds must be properly recorded and accounted for on the Company books, supported by adequate documentation. Records must be accurate, complete, and auditable. They must conform to the law, generally accepted accounting principles, and Company policy." Doc. #35. Plaintiff agrees that Safeway's policy forbids "the charging of direct labor hours (regular hours) to sick leave, vacation, personal day, funeral day, or any other account (such as training) when those hours were not actually used for that purpose." Doc. #39, ¶15.

Every Safeway manager has a weekly labor budget for salaries. Training hours do not count against the budget. Thus, if a manager was going to exceed his weekly budget, he could code some employee time to training in order to meet the budget. Both parties acknowledge that this would be dishonest and a violation of policy. Plaintiff does not dispute that he recorded some non-training hours as training hours in order to meet his budget.

**II.    ADEA Claim.**

**A.    Legal Standard.**

To show a violation of the ADEA, Plaintiff must first establish a prima facie case of discrimination. *See Vasques v. County of Los Angeles*, 349 F.3d 634, 640 (9th Cir. 2003); *Ritter v. Hughes Aircraft Co.*, 58 F.3d 454 (9th Cir. 1995) (standards of proof in ADEA discrimination actions parallel those in Title VII actions). Plaintiff must show that he was (1) a member of a protected class (age 40-70), (2) performing his job in a satisfactory manner, (3) discharged, and (4) replaced by a substantially younger employee with equal or inferior qualifications. *See Wallis v. J.R. Simplot Co.*, 26 F.3d 885, 891 (9th Cir. 1994) (quoting *Rose v. Wells Fargo & Co.*, 902 F.2d 1417, 1421 (9th Cir.1990)). "The requisite degree of proof necessary to establish a prima facie case for Title VII claims on summary judgment is minimal and does not even rise to the level of a preponderance of the evidence." *Id.* at 889. "The plaintiff need only offer evidence which gives rise to an inference of unlawful discrimination." *Id.*

"If the plaintiff establishes a prima facie case, the burden of production – but not persuasion – then shifts to the employer to articulate some legitimate, nondiscriminatory reason for the challenged action." *Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1062 (9th Cir. 2002) (citing *McDonnell Douglas v. Green*, 411 U.S. 792, 802 (1973)). If the employer sufficiently articulates a nondiscriminatory reason, the plaintiff must produce evidence to show that the employer's reason is pretextual. *Goodwin*, 150 F.3d at 1220.

**B.     Prima Facie Case.**

Plaintiff has established a prima facie case. Plaintiff was 59 years old, qualified for his job, terminated, and replaced by a younger store manager. The key question for purposes of this motion, then, is whether Plaintiff has produced sufficient evidence to rebut Defendant's stated reason for his termination.

**C.     Pretext.**

A plaintiff may meet the burden of showing pretext by either direct or circumstantial evidence. Direct evidence is evidence "which, if believed, proves the fact [of discriminatory animus] without inference or presumption." *Goodwin*, 150 F.3d at 1221. Direct evidence typically consists of clearly sexist, racist, or similarly discriminatory statements by the employer. *Id.* "Circumstantial evidence, in contrast, is evidence that requires an additional inferential step to demonstrate discrimination." *Coghlan v. American Seafoods Co., LLC.*, 413 F.3d 1090 (9th Cir. 2005). For example, a plaintiff may show that an employer's reason for acting was a pretext – from which a jury may infer that the true reason for acting was discrimination – by showing that the employer's proffered reason is "unworthy of credence." *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 256 (1981); *Reeves v. Sanderson Plumbing Products, Inc.,* 530 U.S. 133, 147 (2000) ("it is permissible for the trier of fact to infer the ultimate fact of discrimination from the falsity of the employer's explanation."); *Coghlan*, 413 F.3d at 1095.[1] To defeat summary judgment, the amount of

---

[1] Defendant argues that the Court should apply the "same actor inference" articulated in *Coghlan*, which requires an "extraordinarily strong showing of discrimination" by a

- 3 -

1 direct evidence needed is "very little"; circumstantial evidence, however, must be "specific
2 and substantial." *Id.* at 1097.[2]

3       Defendant states that Plaintiff was terminated because he improperly directed
4 employees at his store to falsify time and attendance records by recording regular work hours
5 as training hours, and because he deprived an employee, Joe Motley, of 32 minutes of
6 overtime pay by changing Motley from an 8-hour to a 10-hour employee without Motley's
7 consent. Doc. #34.  In response, Plaintiff admits to mis-coding employee hours in order to
8 meet his weekly salary budget, but argues that mis-coding was a common practice among
9 Safeway's store managers and condoned by upper management. Doc. #38.  Further,
10 Plaintiff admits that he changed Motley's hours, but asserts that he "had [Motley's] explicit
11 consent" to do so. Doc. #39, ¶53.

13       To show that mis-coding was condoned by Defendant, Plaintiff offers a declaration
14 from David Niernberger that states: "[i]n my 18 years as a Store Manager for Safeway, Inc.,

---

plaintiff "where the same actor is responsible for both the hiring and the firing of a discrimination plaintiff." 104 F.3d at 1998. The Court concludes that this heightened standard does not apply in this case because the actors involved in Plaintiff's transfer from Denver to Phoenix and in Plaintiff's subsequent termination were not identical. Approval of Plaintiff's transfer involved Bryan Durrett and Steve Neibergall. Plaintiff's termination involved Bryan Durrett and Phil West. Defendant has presented no evidence to suggest that Bryan Durrett – the common employee in both actions – was the sole or primary decision maker. To the contrary, the evidence suggests that West was the final decision maker. Doc. #35, Ex. Q (Durrett letter referring to "Phil's final decision"). The Court accordingly cannot conclude that Durrett's participation in both actions invokes the same actor inference and requires heightened proof by Plaintiff.

[2] Plaintiff asserts that Defendant's Vice President, Al Duran, made a statement amounting to direct evidence of discrimination – that Plaintiff received a less lucrative package in his transfer from Denver because of his age. But Duran's statement concerned Plaintiff's transfer, not his termination four months later, and Plaintiff has produced no evidence to suggest that the statement reflected a general corporate policy of age discrimination. What is more, Duran was not involved in Plaintiff's termination. The Court accordingly does not regard Duran's statement as direct evidence of discrimination in Plaintiff's termination, and will look instead to Plaintiff's the circumstantial evidence.

- 4 -

1  in the Denver Division, coding an employee's regular work hours as training hours when
2  necessary to make salary was a common practice." Doc. #39, Ex. I.  Plaintiff also provides
3  deposition testimony from Stacy McLean, a Phoenix Safeway store manager, that Al Duran,
4  Defendant's Vice President, told her to "do whatever it takes to keep operations running,
5  [even if] that meant finding people willing to work in Bakery and coding them to training[.]"
6  Doc. #39, Ex. J at 39-42.  Ms. McLean recalls "a dozen or so times at least" when
7  management authorized her to code employee work hours as training. *Id.*

8  Plaintiff further provides the declaration of Thomas Land, a store manager in Surprise,
9  Arizona, concerning budget practices contrary to company policy.  Land states that District
10 Manager Sandy Ottosen announced at a weekly district manager meeting "that if any
11 managers anticipated missing their target salaries for that week, she encouraged them to send
12 their employees to [Land's] store" because of its unlimited grand opening salary budget. *Id.*,
13 Ex. O.  Mr. Land states that "two store managers accepted Ottosen's invitation [with one]
14 charg[ing] eight hours to my store and another manager, after appearing in my store for no
15 more than ten minutes, also charg[ing] eight hours to my store."  *Id.*  Plaintiff has provided
16 additional evidence of management-accepted mis-coding.  Doc. #38 at 10-13.

17 The Court concludes that Plaintiff has presented specific and substantial evidence that
18 mis-coding of time entries was an accepted practice within Safeway management. Defendant
19 vigorously disputes this characterization of the evidence and presents colorable arguments
20 to support its view of the facts, but arguments about the facts are for the jury to consider.
21 The Court must view the evidence in the light most favorable to Plaintiff at this summary
22 judgment stage. Doing so, the Court concludes that a reasonable jury could find that mis-
23 coding was not the true reason for Plaintiff's termination.

24 As noted, Defendant also asserts that it terminated Plaintiff because he changed Joe
25 Motley's hourly schedule without Motley's consent.  The evidence, however, does not
26 support this assertion.  Bryan Durrett's declaration states that Plaintiff was terminated
27 because he "had intentionally misrepresented hours, falsified time records, and violated
28 Safeway's Code."  Doc. #35, Ex. D ¶9.  The declaration makes no mentioned of Joe Motley.

1  In addition, Durrett wrote to Plaintiff on September 17, 2004, concerning Plaintiff's
2  termination. *Id*. Ex. Q. The letter cites to the portions of Defendant's code regarding
3  bookkeeping, but again makes no mention of the Joe Motley matter. *Id*. Phil West, the
4  individual who made the decision to terminate Plaintiff (*see id*., Ex. Q), testified that he
5  considered the following factors: "[w]hether or not there had been misrepresentation of
6  hours used, whether or not it had been in violation of the code of conduct, and thirdly, how
7  we handled the situation of a similar nature in the past." *Id*., Ex. P at 52. Notably, he did not
8  mention the changing of Motley's hourly schedule. Most importantly, West provided this
9  testimony:

10      Q.    Did the Joe Motley issue alone support a decision of termination?
11      A.    That's something that I would have to review with Brian as well as our corporate counsel if that was in fact a stand-alone situation.
12

13  *Id*. at 65. This answer makes clear that, as of the time of his deposition, Mr. West had not
14  determined whether the Motley matter was an independent basis for termination . If that is
15  true, then he certainly had not made that determination when Plaintiff was terminated and
16  Defendant cannot now establish that the Motley matter was a basis for Plaintiff's termination
17  independent of mis-coding.
18        "Where . . . 'an employer articulates several alternative and independent legitimate
19  nondiscriminatory reasons, the falsity of one does not necessarily justify the finding that the
20  remaining articulated reasons were pretextual.'" *Odima v. Westin Tucson Hotel Co.*, 991
21  F.2d 595, 600 (9th Cir. 1993) (citation omitted). In this case, however, Defendant has not
22  established that the Joe Motley situation was an independent nondiscriminatory reason for
23  Plaintiff's termination. Indeed, a rational trier of fact might conclude that Plaintiff's after-
24  the-fact citation of the Motley matter is itself evidence of pretext. The jury could also
25  conclude that because one of Defendant's reason for terminating Plaintiff – mis-coding – was
26  pretextual, Defendant's similar and non-independent reason is also pretextual.
27        The Court concludes that factual issues preclude summary judgment in Defendant's
28  favor. A jury must decide the true reasons for Plaintiff's termination.

**IT IS ORDERED:**

1. Defendant's Motion for Summary Judgment (Doc. #34) is **granted** with respect to Plaintiff's Title VII claim and **denied** with respect to his ADEA claim.

2. The Court will set a final pretrial conference by separate order.

DATED this 25th day of July, 2006.

_____
David G. Campbell
United States District Judge